Cooke, J.
Plaintiff Richard Wolf lived at Ridgefield Park, New Jersey, and was a member of the volunteer fire department there. Although he received training and went to a substantial number of fires in that State, he yearned to be a New York City fireman.
With this ambition in mind and thinking that he would be better prepared to pass a written examination, in January, 1969 he started frequenting a very busy firehouse in the Harlem section of Manhattan that housed Engine Company 58 and Ladder Companies 26-1 and 26-2. He usually arrived on a Friday or Saturday night, about twice a month, and brought with him his rubber coat, rubber boots, helmet and rubber gloves. He would ask for the person in charge and was allowed into the premises, a practice followed on all occasions. Sometimes he slept there, either in the TV room or in a bunk on the second floor, in the presence of firemen. At times in the kitchen there, he ate with the firemen and partook of food which they had purchased jointly. He was given permission on all occasions to ride the engine and ladders and had attended about a hundred fires with these segments of the New York City Fire Department.
On August 2, 1969, Wolf arrived at the firehouse between 7:30 and 8:00 o’clock in the evening and received permission to enter the premises. After going to five or six fires, an alarm came for . a fire at 310 West 121st Street. Following authorization from Acting Lieutenant Scollan, the officer in charge at the time, to ride ladder 26-2, Wolf, wearing his firemanic boots, gloves and helmet, proceeded aboard the apparatus to the fire scene, a five-story nonfireproof building. The full complement for such a ladder company was eight or nine men, but on that venture there were only six. At the fire, Wolf stood on the truck and watched until Brun, a fireman, asked that he take a Halligan tool, pike pole and gasoline can for a *572 power saw up to the roof. He followed the firemen to the roof of the adjacent building and they then crossed over an 18-inch-high parapet wall to the roof of the burning structure. Once there, Wolf handed over the equipment to the men as needed. Upon request he delivered the gasoline to Brun who cut a hole in the roof. After standing for 5 or 10 minutes in a corner as requested by Brun, Scollan asked Wolf to come over with the pike pole and give a hand in tearing apart the roof which Brun had cut. It was dark and smokey. After working with Scollan for about five minutes, Scollan pointed and told Wolf to get off the roof. After proceeding in the direction as pointed to by Scollan, in which direction were some firemen standing on a roof, Wolf climbed over a 30-inch-high parapet and fell into an air shaft sustaining serious injuries.
This action was instituted by Wolf to recover for personal injuries and by his wife who asserted a derivative cause of action. The issue of liability was tried in the Civil Court of New York City and, based on a jury verdict, an interlocutory judgment was entered in favor of the plaintiffs and against the defendant. In turn, this judgment was affirmed by the Appellate Term and Appellate Division.
As to defendant’s negligence, the trial court instructed the jury:
"Negligence may be defined as the failure or omission to do some act or to perform some duty which one person owes to another. More simply defined, it is the absence of such care as a reasonably prudent person would be expected to use under the circumstances. I will repeat. Negligence is the absence of such care as a reasonably prudent person is expected to use under those circumstances, the circumstances in this particular case.
* * *
"However, if you are satisfied as to the first proposition that the plaintiff was in fact free from contributory negligence, that he did act as a reasonably prudent person under the circumstances, then you will be faced with the second question, that is the guilt of negligence of the defendants. Did the defendant through its agents conduct themselves as reasonable prudent persons under those circumstances? It matter not that there is a departmental rule or regulation against certain acts or omissions. It matters not, the issue here is whether *573 those acts or omissions were in fact created. The mere fact that there are regulations against them does not absolve the defendant City of any negligence. You will have to determine whether or not the plaintiff was free from contributory negligence or the defendant was guilty of negligence.
* * *
"Plaintiff maintains that solely as a result of the negligence of the defendant he was caused to be hurt, and he maintains that there was no negligence on his part that he was not negligent in any way or to any degree, but only as a result of the negligence of the defendant he was caused to be hurt.
* * *
"Now, the plaintiff claims that the defendant City was negligent particularly in not escorting him off the roof when he was directed to leave, and that he was not negligent in any degree.”
Defendant made no exceptions or requests to the charge.
Where a person voluntarily assumes the performance of a duty, he is required to perform it carefully, not omitting to do what an ordinarily prudent person would do in accomplishing the task (Marks v Nambil Realty Co., 245 NY 256, 258; Paul v Staten Is. Edison Corp., 2 AD2d 311, 325; McDonald v Central School Dist. No. 3, 179 Misc 333, 335, affd 264 App Div 943, affd 289 NY 800; Zelenko v Gimbel Bros., 158 Misc 904, affd 247 App Div 867). There was proof that Acting Lieutenant Scollan ordered plaintiff Richard Wolf off the roof, that Scollan pointed to a direction to get off the roof and that said plaintiff proceeded to go in that direction, whereupon he fell. It is uncontradicted that the acting lieutenant did not have anyone accompany Wolf from atop this five-story building and that his experience in New Jersey did not include firefighting at such a structure. These were factors to be considered in measuring the care owed Wolf as related to the risk of harm reasonably to be perceived, regardless of his status. With the proof at hand that Scollan had assumed control and direction of the situation, it was permissible for the jury to find from the evidence that he performed his duty negligently by ordering plaintiff Richard Wolf, inexperienced in fighting fire in the type of building in question, off the roof in a direction where visibility was poor and without an escort (cf. Verduce v Board of Higher Educ. in City of N. Y., 8 NY2d 928; Broderick v *574 Cauldwell-Wingate Co., 301 NY 182, 187-188).*
Wolf was not guilty of contributory negligence as a matter of law since the jury could find that he did not know of the air shaft and that he had a right to rely on the directions of the acting lieutenant and assume he was being ordered to an area of safety. Neither can assumption of risk be found as a matter of law, since there was proof from which it could be found that Wolf did not fully perceive the risk involved.
The order of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
Order affirmed, with costs. Question certified answered in the affirmative.

 The parties agree that the Volunteer Firemen’s Benefit Law is inapplicable here. A claim made by plaintiff for benefits thereunder was disallowed and the case closed. (See General Municipal Law, § 209-i; Volunteer Firemen’s Benefit Law, § 3, subds 1, 2; §§ 19, 21, subd 2.)