FRANCIS JOHN GEREMIA, et al., Plaintiffs-Appellants *v.*
THE STATE OF HAWAII, Defendant-Appellee, and
THE LIHUE PLANTATION CO., INC., Defendant.

NO. 5941

DECEMBER 22, 1977

RICHARDSON, C.J., KOBAYASHI, OGATA,
MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY KIDWELL, J.

In this action the parents and administrator of the estate of Samuel John Geremia sought damages for his death. In a bench trial, upon the State's motion for dismissal, the circuit court entered judgment for the State and against the Plaintiffs at the close of the Plaintiffs' case, and the Plaintiffs appealed. We affirm.

The Waipahee, or Slippery, Slide is a portion of a watercourse on the Island of Kauai. The stream cascades down a sloping rock face into a natural pool. Sliding down the rock face into the pool is a sport which has been much enjoyed by residents and visitors for many years. The Slide is located in mountainous terrain, on land which is privately owned, and is reached by a trail of approximately one-third mile originating at a parking area beside a canefield road. The trail, parking area and road are in the same private ownership as the Slide.

On April 5, 1971, Geremia and two companions drowned while swimming at the Slide. Michael and Tom Seage were the two survivors of a party of five boys, all strangers to Kauai, who were there on vacation from work or school in Honolulu and visited the Slide together as the result of reading about it in a brochure given to them at their hotel. Michael testified that Geremia was a strong swimmer, that when they arrived at the Slide the current in the stream was moderate but that it increased suddenly and significantly while they were there, and that he had last seen Geremia going to the aid of another boy who was floundering in the pool at the base of the Slide. He also testified that it had rained a great deal during their stay on Kauai but that it was not raining when the boys arrived at the Slide.

The Plaintiffs introduced evidence that heavy rains had fallen on North Kauai on April 3rd, 4th and 5th which caused

some local flooding and called as a witness a State forester who testified that the State was aware that the Slide area was prone to sudden flooding when heavy rains fell in the watershed area upstream from the Slide. This witness testified that he became aware of the flood danger after reading newspaper accounts of two drownings or near drownings at the Slide in 1967 and 1968. He said that in response to these incidents he met with the Kauai Fire Chief and they decided to create a warning sign, what the sign should say, and where it should be located. A sign was erected on the trail to the Slide which read "Waipahee Slide, Danger, Do Not Swim When Rain Is Falling in Upper Stream Areas, *Stream May Flood Suddenly*". Both Michael Seage and his brother Tom testified that on the tragic day all five boys had been racing down the trail and had taken a short-cut before reaching the sign. Both of the survivors testified they did not remember seeing the sign and remained firm in their non-recollection despite extensive cross-examination.

There was evidence that the State had, with the permission of the landowner, improved a parking area at the intersection of the access road and the trail, erected a direction sign at the intersection of the access road and the main highway, erected a sign warning visitors to lock their cars at the parking lot, improved and maintained the trail itself, and included the Slide on several official maps and State sponsored visitor information brochures. The State did nothing to alter the natural condition of the stream, the pool, or the Slide itself and had no right to enter upon and occupy or use the land other than an apparently revocable oral license to maintain the trail and the State's installations. The landowner was originally a defendant in this action but was removed by stipulation prior to trial, leaving the State as the only defendant.

The trial court concluded that the State had no control over the Slide pool and that the State's only responsibility, if any, was the maintenance of the trail. The questions presented by this appeal are whether the State owed a duty of care to Geremia and, if so, the nature of the duty.

On the Plaintiffs' theory of this case, the State is liable as

an occupier of the land upon which the Waipahee Slide is located. The Plaintiffs seek to cast the State as an occupier by reason of its general land-use powers[1] and the control it exercised in improving the access to the Slide. Thus analyzed, the liability of the State would be the special liability of a possessor (occupier) of land to his invitees, as stated in RESTATEMENT OF TORTS 2d § 343 (1965).[2] The Plaintiffs contend that the State, as an occupier of the land, had a duty of care towards Geremia without regard to whether there was a duty and consequent liability under general tort principles. The State argues that it did not have sufficient indicia of control to be classified as an occupier of the land.[3] We agree that it would be unrealistic to regard the State as a possessor or occupier of the land for the purposes of the rule of law upon which the Plaintiffs rely.

But we cannot dispose of this case by merely denying the relevancy of the special rule of liability which the Plaintiffs urge us to apply. The Plaintiffs also assert, as grounds of liability on the part of the State, that invitations were issued by the State to the public to use the Slide for recreation, that these invitations were issued by the State with knowledge of

---

[1] The Plaintiffs refer to authority possessed by various State agencies to regulate the use of the land under Hawaii Revised Statutes §§ 26-15, 183-1 and 2; 184-3(6), 5, 5.1 and 5.2; and 205-5(a) and Chapter 520. However, no State agency is thereby authorized to use the land or alter its condition, except possibly to correct a violation of law by the landowner. The entries by the State upon the land in relation to the access road, parking area and trail were not made pursuant to any authority contained in these statutes.

[2] § 343. Dangerous Conditions Known to or Discoverable by Possessor.

A possessor of land is subject to liability for physical harm caused by his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

[3] The State concedes, on this appeal, that the limitation on a landowner's liability provided by Chapter 520, HRS, which limits the duty to give a warning of dangerous conditions where entry is for recreational purposes, is not available to the State. HRS § 520-2(1).

dangers to which users of the Slide were exposed, that inadequate warnings of and precautions against these dangers were given and taken by the State, that Geremia was induced by such invitations to go to the Slide and that he met his death as the result of his consequent exposure to the known dangers. If a finding of these facts would have supported a conclusion of liability under general principles of tort law, did the Plaintiffs' failure to meet the tests of special liability of an occupier of land deprive them of the right to take their case to the jury?

The special rules as to the liability of an occupier of land to trespassers, licensees and invitees are limitations, not extensions, of conventional tort liability. HARPER & JAMES, TORTS, §§ 27.1, 27.2 (1956). We have held that in assessing the tort liability of an occupier of land we will no longer allow the common law distinction between invitees and licensees to be determinative of the scope of the occupier's liability. *Pickard v. City & County*, 51 Haw. 134, 452 P.2d 445 (1969), and *Gibo v. City & County*, 51 Haw. 299, 459 P.2d 198 (1969).

In thus abrogating the distinction between invitees and licensees we have continued to recognize that the control exercised by an occupier over the condition of his land and his opportunity to take precautions against and to warn of known dangers creates a duty of care toward his invitees and licensees. But the existence of this special rule of liability, whatever may be the extensions and limitations of conventional tort liability in the case of an occupier, has no bearing upon the liability of a non-occupier. Circumstances may exist in which a non-occupier must take cognizance of dangerous conditions existing on the land of another in discharging a duty of care which he owes to a third person. The existence of such a dangerous condition, although not under the control of the actor, may be the fact which renders negligent an otherwise blameless act. Thus one who has no duty to correct or warn of a dangerous condition on another's premises may not act in disregard of its existence, in fulfilling a duty of care which has arisen quite independently of the occupier's duty. These propositions are but particularizations of the general principle that one who gratuitously acts so as to expose

another person to danger must observe ordinary care in so doing, notwithstanding that he would have been wholly free from obligation if he had refrained from acting.

This general rule was well stated by Judge Cardozo in *Glanzer v. Shepard*, 233 N.Y. 236, 135 N.E. 275, 276 (1922):

> It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all.

See also RESTATEMENT OF TORTS 2d §§ 321, 323 (1965). The rule has been employed in a variety of cases. In *Indian Towing Co. v. U.S.*, 350 U.S. 61, 69 (1955), failure to use due care in maintaining a lighthouse subjected the United States to liability under the Federal Tort Claims Act where such failure resulted in damage to the cargo of a barge chartered by the plaintiff. Justice Frankfurter, writing for the majority, stated:

> The Coast Guard need not undertake the lighthouse service. But once it exercised its discretion to operate a light on Chandeleur Island and engendered reliance on the guidance afforded by the light, it was obligated to use due care to make certain that the light was kept in good working order; and, if the light did become extinguished, then the Coast Guard was further obligated to use due care to discover this fact and to repair the light or give warning that it was not functioning. If the Coast Guard failed in its duty and damage was thereby caused to petitioners, the United States is liable under the Tort Claims Act.

Numerous occasions for the application of the rule have arisen out of the gratuitous undertaking of the driver of a motor vehicle to signal to another driver or a pedestrian that the way is clear to proceed. It is well established that liability may arise out of negligence in giving such a signal, although no obligation to act existed. *Wulf v. Rebbun*, 25 Wis. 2d 499, 131 N.W. 2d 303 (1964), PROSSER, TORTS, § 56, p. 343 (4th ed. 1971). *See also* cases collected in annotations at 48 A.L.R. 2d 252 (1956) and 90 A.L.R. 2d 1431 and 1442 (1963). A landlord who makes repairs without obligation is liable if he

thereby creates a false impression of safety in a dangerous situation. *Marks v. Nambil Realty Co.*, 245 N.Y. 256, 157 N.E. 129 (1927), HARPER & JAMES, TORTS § 18.6, p. 1045 (1965), RESTATEMENT OF TORTS 2d § 362 (1965). Likewise a gas company, which without obligation developed a practice of odorizing its gas, was liable for damage which resulted when the plaintiff was unable to detect the presence of non-odorized gas supplied by the company. *Roberts v. Indiana Gas & Water Co.*, 140 Ind. App. 409, 221 N.E. 2d 693 (1966). *See also Wolf v. City of New York*, 39 N.Y.2d 568, 384 N.Y.S.2d 758, 349 N.E.2d 858 (1976); *Colonial Savings Assn. v. Taylor*, 544 S.W.2d 116 (Tex. 1976).

At the heart of these decisions is the fact that the defendant voluntarily undertook a course of affirmative conduct intended to induce the plaintiff to engage in an action, and also created a false appearance of safety upon which the plaintiff relied to his or her detriment. In the trial of this case, the Plaintiffs sought to predicate liability upon just such a voluntary invitation and false appearance of safety. The Plaintiffs and the trial court erroneously assumed that the duty of care which would translate these facts into actionable negligence must rest upon the characterization of the State as an occupier of the land. We conclude that occupier status was not a prerequisite to the existence of the duty for which the Plaintiffs contended. The Plaintiffs' failure to present their case to the trial court on this theory is not fatal to our consideration of the issue. *Earl M. Jorgensen Inc. v. Mark Construction Co.*, 56 Haw. 466, 540 P.2d 978 (1975).

This case comes to us on appeal from a dismissal at the close of Plaintiffs' evidence. Rule 41(b), HRCP, provides for such a dismissal where "upon the facts and the law the plaintiff has shown *no right to relief.*" A dismissal on this ground involves a determination on the merits. The usual standards of review of a judgment on the merits in non-jury cases are controlling and findings of fact are not to be set aside unless clearly erroneous. 5 MOORE'S FEDERAL PRACTICE ¶ 41.13[4] (1977). Apparently for the reason that the trial court considered the only issue to be the control exercised by the State as an occupier of the land, findings

were not made with respect to the existence of an invitation by the State, its creation of a false appearance of safety or the reliance thereon by Geremia. Nevertheless, we find the record to be sufficiently clear that we do not need the aid of additional findings in reviewing the judgment of dismissal. *Associated Engineers & Contractors, Inc. v. State,* 58 Haw. 187, 567 P.2d 397 (1977). Upon a careful review of the entire record, we conclude that there was no evidence before the trial court from which the court could have made the findings essential to the establishment of the Plaintiffs' claim.

We may assume, without expressing an opinion, that the acts of the State in improving the parking area and trail, erecting signs and including the Slide on official information maps and brochures were sufficient to have enabled the court to find a course of conduct which constituted an invitation to use the Slide. Similarly, we may assume that the State's actions conveyed a representation that would create a false sense of safety in the minds of those who were thereby induced to use the Slide. The fact remains, however, that the State had neither jurisdiction nor control over the Slide itself. The State's liability cannot, therefore, be premised upon owner's or occupier's tort liability principles. Its liability, if any, must be predicated upon a duty running not to the public at large as would be the case with respect to public parks and other public facilities but to the individual whom the State has actually misled to his injury. In this situation the State's liability could be assessed under a principle analogous to the general principle of liability which requires an actor to exercise reasonable care when conferring a gratuitous benefit. In this context the State would be analogous to the truck driver who has no obligation to signal but is liable if he negligently signals a car to pass, or the landlord who without obligation makes repairs but is liable if he thereby creates a false appearance of safety in a dangerous situation. Accordingly, it still remained for the Plaintiffs to show that Geremia was actually induced by the State's actions to use the Slide and was thereby given a false sense of safety in doing so. Both Michael and Tom Seage testified that they and Geremia learned of the existence of the Slide from a brochure given to

them at their hotel, but did not identify the brochure or relate its contents although linkage of the brochure to the State was essential to its relevance under the Plaintiffs' theory of the case. Brochures published by the State, by a State-supported agency and by private concerns were introduced in evidence, with no attempt to show which, if any, was that which was seen by the boys before the fatal excursion. The warning sign may have tended to induce a false sense of safety from sudden flooding of the Slide when no rain was falling, at a time when earlier rains had created a danger. Possibly, although we express no opinion, it might also have constituted evidence, when coupled with the conduct of the State in making improvements to the parking area and trail to facilitate access to the Slide, from which a trier of fact could have reasonably found not only an invitation to visit the Slide, but also an invitation to use the Slide. However, the thrust of the Plaintiffs' presentation was to negate any knowledge of the sign, and the testimony was to the effect that the boys were racing down the trail and took a short-cut before reaching the sign.

It has been said that the underlying assumption of the general rule permitting affirmance of the trial court upon a correct, alternative ground not considered by the trial court is that the parties had a full and fair opportunity to develop facts relevant to the decision, and that when this opportunity has not been available the proper resolution of the appeal is not affirmance but remand. *Bernal v. American Honda Motor Co., Inc.,* 87 Wash.2d 406, 553 P.2d 107 (1976); *cf. Taylor v. United States,* 550 F.2d 983 (4th Cir. 1977). Although we have concluded that the theory upon which this case was presented to and decided by the trial court was inappropriate, our analysis is grounded in fundamental principles of tort law and does not represent a departure from precedent. Plaintiffs sought to support their claim in the trial court by showing fault on the part of the State in inducing members of the public to use the Slide under false impressions of its safety. Since the Plaintiffs' theory made such evidence relevant to the fulfillment by the State of its obligations as an occupier of the land, it cannot be said that the Plaintiffs lacked a full and fair opportunity to develop facts relevant to the decision of the

trial court. The Plaintiffs are not entitled to another opportunity to fulfill their burden of proof.

The judgment is affirmed.

*H. William Burgess* for Plaintiffs-Appellants.

*Nelson S. W. Chang,* Deputy Attorney General, for Defendant-Appellee.