OPINION OF THE COURT
David B. Cohen, J.
*642 Introduction and Background
In this holdover proceeding, petitioner seeks to recover possession of the premises claiming that respondent has unreasonably withheld access to her apartment to perform necessary repairs, specifically the replacement of the wood floorings throughout the apartment.
At trial, this court heard the testimony of Andrew Gross, an employee of Ogdan CAP Properties LLC (the entity that manages apartments associated with unsold shares on behalf of the petitioner), Dr. Milton Fielding, respondent’s dentist and the respondent, Paulette Hirsch.
Question Presented
Is a landlord entitled to a judgment of possession against a tenant who refuses access for the landlord to cure a housing code violation requiring the repair or replacement of the wood floor in her apartment because she claims that her health will be adversely affected by the glue used to lay the new floor?
Findings of Fact
Respondent resides at 201 East 28th Street, apartment No. 11-K, New York, New York, 10016 (the premises or apartment). Petitioner is the proprietary lessee of the premises.* Respondent entered into the initial written rent-stabilized lease agreement for this premises on March 25, 1965 and most recently renewed the lease with petitioner for a two-year term commencing April 1, 2002 at a rental rate of $891.82 per month. There is a currently effective multiple dwelling registration for the building on file with the City of New York, Department of Housing Preservation and Development (HPD), and the apartment has been consistently recorded in the rent registration records of the State of New York, Division of Housing and Community Renewal (DHCR).
In March 2006, Mr. Gross received a notice of violation dated March 6, 2006, requiring petitioner to repair/replace missing wood floor tiles throughout the entire apartment. About a week after receiving the notice, Mr. Gross spoke to respondent during a few phone conversations in which he requested access to *643 respondent’s apartment to perform the repairs. Respondent denied access indicating that she did not want the repairs to the floor performed during this time of year for health reasons.
By letter dated April 27, 2006, Mr. Gross demanded access for repairs to take place on May 15, 2006 and May 16, 2006 between the hours of 9:30 a.m. and 4:00 p.m. The letter indicated that it was necessary for respondent to move furniture and other belongings that would hinder the ability to perform the repairs; petitioner was again denied access.
On May 17, 2006, petitioner served a 10-day notice to cure upon respondent setting forth that respondent was in violation of lease provisions and Rent Stabilization (RSC) (9 NYCRR) § 2524.3 (e) in that respondent had unreasonably refused petitioner access to the premises to make necessary repairs to the floor and that respondent was to cure the breaches by contacting petitioner to arrange for access for repairs to be performed on or before June 5, 2006. On June 6, 2006, petitioner served a seven-day notice of termination upon respondent terminating her tenancy pursuant to RSC § 2524.3 (a) effective June 19, 2006 for her unreasonable refusal of access in violation of her lease and RSC § 2524.3 (e). The duly served notice of petition and petition were filed with the Clerk of this Court on July 14, 2006.
Dr. Milton Fielding testified that he is, and has been, a dentist and temporomandibular joint (TMJ) specialist for 61 years and respondent has been his patient for 20 years. He testified that, in dentistry, he uses certain substances with volatile fumes. Some patients are much more sensitive to such substances and he is limited in their use. Some patients have allergic responses which could result in headache and nausea, skin irritation and vomiting. He testified that floor glue fumes are also volatile in nature and have similar effects, however, he did not know what floor glue petitioner intended to use in the apartment. He further testified that vapors are present while the glue is still wet, that an individual is not placed at risk if that individual does not inhale the vapors and that once a glue dries it is no longer volatile.
Respondent testified that the condition of her floor which needed repair has existed since June 2003, that she had asked many times through her attorney to have the floor, on which she has tripped several times, fixed. In January 2006 pursuant to court order in an unrelated matter, she gave access to petitioner’s workers, who entered her apartment and performed *644 a lot of repair work. On April 10, 2006, respondent gave the superintendent of the building a set of keys to her apartment and the superintendent signed for the keys. On April 19, 2006, Mr. Gross was scheduled to visit her apartment regarding problems with the shower door and kitchen floors and to remove some loose parquet wood floor tiles, but he never arrived. Ms. Kirsch received a letter from Mr. Gross and responded with a phone call after April 21, 2006. She advised Mr. Gross that petitioner could not do the repair because of her bad allergy to the glue and Mr. Gross responded that the repair “must be done now.” She called Mr. Gross back again the same day and told him that her reason for denying access was that she had had a “negative experience” with glue, that she is violently allergic and if exposed will pass out and go into shock. Respondent testified that she and Mr. Gross had several conversations regarding access to perform the repair to the floor prior to May 17, 2006 and that petitioner has made attempts at access since May 17, 2006.
Conclusions of Law
The RSC authorizes eviction proceedings against a tenant where “the tenant has unreasonably refused the owner access to the housing accommodation for the purpose of making necessary repairs or improvements required by law or authorized by the DHCR” (RSC § 2524.3 [e]; Anderson v Bidlo, 2002 NY Slip Op 50113[U] [App Term, 1st Dept 2002]). It is undisputed that there is a report of violation imposing upon petitioner a legal requirement to repair the missing wood floor tiles throughout the entire apartment. Respondent claims that her refusal of access was not unreasonable since she could be harmed by the glue petitioner would have used to put down the new wood floor. This court’s research has turned up no legal precedent setting forth the circumstances under which a tenant’s refusal to provide access has been held unreasonable.
The use of the word “unreasonable” in RSC § 2524.3 (e) requires the application of an objective standard. “Statutes or rules of law requiring a person to act ‘reasonably’ or to have a ‘reasonable belief’ uniformly prescribe conduct meeting an objective standard measured with reference to how ‘a reasonable person’ could have acted” (People v Goetz, 68 NY2d 96, 112 [1986] [application of objective standard to defense of justification]; see People v Cantor, 36 NY2d 106, 112-113 [1975] [application of objective standard to determination whether police acted reasonably in detaining suspect]; Bethel v New York City *645 Tr. Auth., 92 NY2d 348, 353-354 [1998] [objective test applied in determining standard of care in negligence cases]; Wolf v City of New York, 39 NY2d 568, 573 [1976] [same]). In construing the reasonable person standard (as applied in negligence cases), the Court in Bethel explained:
“ ‘The whole theory of negligence presupposes some uniform standard of behavior. Yet the infinite variety of situations which may arise makes it impossible to fix definite rules in advance for all conceivable human conduct . . . The standard of conduct which the community demands must be an external and objective one, rather than the individual judgment, good or bad, of the particular actor . . . The courts have dealt with this very difficult problem by creating a fictional person . . . the “reasonable [person] of ordinary prudence” (Prosser and Keeton, Torts § 32, at 173-174 [5th ed]). (See also, Restatement [Second] of Torts § 283, comment c [“(t)he chief advantage of this standard of the reasonable (person) is that it enables the triers of fact ... to look to a community standard rather than an individual one, and at the same time to express their judgment of what that standard is in terms of the conduct of a human being”].)’
“The objective, reasonable person standard in basic traditional negligence theory, however, necessarily takes into account the circumstances with which the actor was actually confronted when the accident occurred, including the reasonably perceivable risk and gravity of harm to others and any special relationship of dependency between the victim and the actor.
“ ‘The [reasonable person] standard provides sufficient flexibility, and leeway, to permit due allowance to be made . . . for all of the particular circumstances of the case which may reasonably affect the conduct required’ (Restatement [Second] of Torts § 283, comment c; see also, Prosser and Keeton, op. cit., at 174).” (Bethel, 92 NY2d at 353.)
Thus, in applying an objective standard the court must consider what “an ordinarily prudent and cautious [person] under the circumstances” would have thought and acted. (People v Cantor, 36 NY2d at 113.)
At bar, the circumstances faced by respondent were that her parquet wood floor was in a dangerously deteriorated condition *646 to the point where she had tripped several times on loose floor boards and the condition had been found to be in violation of the Housing Maintenance Code. The use of glue to install the new floor could cause her an allergic reaction if she was exposed to it during its application or during the period while the glue dried. Once the new floor was installed, the dangerous condition created by the old deteriorated floor would be ameliorated. Although respondent believed that she should withhold access under these circumstances, this belief was unreasonable under the circumstances. An ordinary prudent individual would accept a potential short term risk to his or her health in order to alleviate a condition that was causing an ongoing and continuing risk to her health and safety.
Further, a person of ordinary prudence, who was susceptible to an allergic reaction during a repair, would mitigate the short term risk to health by absenting herself from the premises during the period of glueing and drying. Thus, the continuing hazard caused by the broken floor would be abated and the short term potential hazard from the glue avoided.
Instead, respondent refused access to perform the repair to the floor. Such refusal of access was unreasonable under the circumstances as it allowed the risk posed by the dangerous floor to continue when a reasonable course of conduct would have permitted the repair while protecting respondent from a possible health risk.
Accordingly, petitioner is granted a judgment of possession as against respondent. Issuance of the warrant shall be stayed for 10 days after service of a copy of this order with notice of entry upon respondent for respondent to cure (see RPAPL 753 [4]). Cure may be effectuated by respondent providing petitioner two consecutive business dates of access during the 10-day cure period. Petitioner is to be provided unrestricted access to all areas of the apartment where the parquet wood floor is to be replaced. All items of personal property are to be removed by respondent from such areas in order that petitioner may have unrestricted access to perform the repair.

 The proprietary lease that had been in effect at the time of commencement of the proceeding was lost by the prior property manager and a replacement proprietary lease dated September 20, 2006 was introduced into evidence at trial.