■ Bryant Cooper, Appellant, v Starrett City Inc. et al., Respondents. [997 NYS2d 16]—

Order, Supreme Court, Bronx County (Sharon A.M. Aarons, J.), entered November 18, 2013, which granted defendants' motion for summary judgment dismissing the complaint, unanimously affirmed, without costs.

During a heat wave in early June of 2008, plaintiff's decedent, Ellis Cooper, who was disabled and wheelchair bound, suffered a heat stroke and died on June 10, 2008. At the time of his death, Cooper had been living with his mother and brother in an apartment located within the 46-building complex known as Spring Creek Towers in Brooklyn, which is owned by defendant Starrett City. The complex had a single central heating and air conditioning system, using a single pipe system located in Starrett's power plant. Under New York City law, the apartment complex is required to maintain the capacity to provide heat to

its tenants through May 31st of each year (Administrative Code of City of NY § 27-2029). After that date, Starrett undertakes a process of changing over from heat to air conditioning.

Plaintiff alleges that defendants voluntarily undertook a duty to provide central air conditioning, while at the same time preventing tenants from using individual air conditioning units, and were negligent in delaying the start of the changeover process, notwithstanding that a heat wave was forecast.

Although there is no contention that landlords are required to provide air conditioning, the general rule is that, when a person "voluntarily assumes the performance of a duty, he is required to perform it carefully, not omitting to do what an ordinarily prudent person would do in accomplishing the task" (*Wolf v City of New York*, 39 NY2d 568, 573 [1976]; *see also Parvi v City of Kingston*, 41 NY2d 553, 559 [1977]; *Marks v Nambil Realty Co.*, 245 NY 256, 258 [1927]).

Defendants demonstrated their prima facie entitlement to summary judgment by the deposition testimony of their employees that the seasonal changeover process begins every year at the earliest possible date, May 31st, and is complete no later than June 15th, and that the changeover in 2008 followed the usual process. They testified that the process involves shutting down the heating system, draining 250,000 gallons from the pipes, so that the pumps can be inspected and cleaned, and then re-filling the pipes with 250,000 gallons of water that is pumped through refrigeration units until the water is cooled to about 40 degrees Fahrenheit. Although defendants did not provide admissible evidence for their assertion that the changeover process was actually completed by June 9th in 2008, the admissible evidence demonstrates that they undertook the seasonal changeover from heat to air conditioning in their usual manner, without undue delay (*see Peralta v Henriquez*, 100 NY2d 139, 144 [2003]). Defendants also demonstrated that they received no notice that plaintiff's decedent needed relief from the heat.

In opposition to defendants' summary judgment motion, plaintiff failed to raise a triable issue of fact as to whether defendants were negligent. The affidavit of plaintiff's engineering expert was insufficient to raise an issue of fact, since he simply asserted in a conclusory manner, without basis in the record, that defendants were reckless and late in providing air conditioning to the building complex (*see Belmer v HHM Assoc., Inc.*, 101 AD3d 526, 529 [1st Dept 2012]). There is no legal basis for the expert's assertion that defendants could have transported plaintiff's decedent to a cooling station or a hospital, on their own initiative. Landlords are not insurers of tenant safety (*see*

*Banner v New York City Hous. Auth.*, 94 AD3d 666 [1st Dept 2012]), and here it was undisputed that decedent's caregivers never alerted defendants that he needed any assistance. Concur—Gonzalez, P.J., Tom, Renwick and Gische, JJ.