MARILYN KAMAKAWIWOOLE, Plaintiff-Appellant, *v.* STATE OF HAWAII and DOES I-X, Defendants-Appellees

NO. 10369

(CIVIL NO. 7790)

APRIL 7, 1986

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, C.J.

Plaintiff Marilyn Kamakawiwoole (Marilyn) appeals the November 27, 1984 summary judgment against her and in favor of the State of Hawaii (State). We vacate the November 27, 1984 summary judgment.

The issues and our answers are as follows:

1. Did the State owe a duty to Marilyn and her infant son to maintain the Army's ramp in a safe condition? No.

2. Did the State owe Marilyn and her son a duty to warn them of the unsafe condition of the Army's ramp? The State had such a duty only if it induced or invited Marilyn and her son to use the Army's property.

3. Is there a genuine issue of material fact whether the State impliedly invited Marilyn and her son to use the Army's property? Yes.

Viewed in the light most favorable to Marilyn, the relevant facts are as follows: At the relevant time, the State was the occupier of the Kawaihae Harbor Project area (KHP). Within the KHP was an undemarcated area under the jurisdiction of the United States Army (Army). The Army's area was bounded on three sides by the KHP and on the fourth by the ocean. The KHP was bounded by a fence, the Army's area, and the ocean. Within the Army's area were three LST landing ramps.

Two were not used by the Army. The third ramp (ramp), a concrete ramp built a little higher than high tide, was used by the Army on a regular basis.

The entry to the KHP, which the State left open, had a sign indicating that it was under the State's jurisdiction. Nothing at the KHP indicated that an area within the KHP was under the Army's jurisdiction.

Portions of the KHP, including the area under the Army's jurisdiction, had for many years been used by the public for picnicking, snorkeling, fishing, swimming, and camping. On October 5, 1980, at between 9:00 and 9:30 a.m., Marilyn, her friends, and her one-year-old son entered the KHP to picnic. At approximately 11:30 a.m., Marilyn saw her son walking toward the edge of the ramp. Not wanting him to fall into the water, she went to get him. She was wearing slippers. The ramp had slippery algae or limu[1] on it. Enroute she slipped on the ramp, fell, and hit her head on the concrete. As a result, she suffered personal injuries including the loss of her senses of taste and smell.

On March 25, 1982, Marilyn sued the State and Does 1 to 10. However, she never identified the Does and did not sue the Army. Moreover, the State did not file a third-party claim against the Army.

On November 27, 1984, the lower court awarded summary judgment against Marilyn in favor of the State. Apparently, the lower court concluded that the State owed no legal duty to Marilyn.

1.

One of Marilyn's theories of the State's liability was the State's alleged negligent maintenance of the ramp. Since the State was not the occupier of the ramp, it had no duty to maintain the ramp. *See Gibo v. City & County of Honolulu,* 51 Haw. 299, 459 P.2d 198 (1969). Therefore, that theory is without merit and summary judgment was properly entered dismissing it.

---

[1] In Hawaiian. "[a] general name for all kinds of plants living under water, both fresh and salt, also algae growing in any damp place in the air, as on the ground, on rocks and on other plants[.]" M. Pukui and S. Elbert, *Hawaiian-English Dictionary* 190 (3rd ed. 1965).

2.

In *Tarshis v. Lahaina Investment Corp.*, 480 F.2d 1019 (9th Cir. 1973), Tarshis, a registered guest at defendant's Royal Lahaina Hotel, was injured when she was thrown by a huge wave in the ocean fronting defendant's hotel. The Ninth Circuit Court of Appeals held that defendant owed Tarshis a duty to warn her of the dangerous conditions in the ocean fronting its hotel property.

In *Kaczmarczyk v. City & County of Honolulu,* 65 Haw. 612, 656 P.2d 89 (1982), the record included evidence that Kaczmarczyk entered the beach and ocean fronting the City's Ehukai Beach Park by going through Ehukai Beach Park. Kaczmarczyk drowned in the ocean. The State, and not the City, had jurisdiction and control over the ocean. However, the supreme court held that the Kaczmarczyk estate stated a cognizable theory of tort liability against the City and reversed the summary judgment.

In *Littleton v. State,* 66 Haw. 55, 656 P.2d 1336 (1982), the record included evidence that Littleton entered the beach fronting the City's Ewa Beach Park by going through the Ewa Beach Park. While on the beach fronting the fourth lot next to Ewa Beach Park, she was injured by a telephone pole which was in the water and being moved by the wash of the waves. Littleton was held to have stated a cognizable theory of tort liability against the City.

These cases state a rule that an occupier of land fronting the beach and ocean who induces or invites a business or public invitee[2] onto its land to engage in an action on the adjoining public beach or ocean may owe a duty[3] to warn that invitee of the dangers involved in engaging in

---

[2]*See* 62 Am. Jur. 2d *Premises Liability* § 39 (1972).

[3]A duty to warn of the dangers is owed when (1) the defendant knew or should have known of the relevant dangers; (2) the defendant's inducement or invitation created a false appearance to the plaintiff that it was safe to do the act; (3) the defendant knew or should have known that he was creating the false appearance of safety to the plaintiff; and (4) the plaintiff did not know of the dangers and a person of ordinary intelligence in the plaintiff's situation would not have known of the dangers.

Other material elements of plaintiff's cause of action are (1) the plaintiff reasonably relied on the false appearance of safety created for him by the defendant; (2) the plaintiff accepted the defendant's invitation and did the unsafe act; and (3) the plaintiff was damaged by the danger or by one or more of the dangers that the defendant was obliged to warn him about.

the action. In *Littleton,* citing *McKinney v. Adams,* 68 Fla. 208, 66 So. 988 (1914), the supreme court stated that the "invitation [to use the premises where the accident occurred] may be implied" from the "continued and general custom of the patrons of the place." *Id.* 66 Haw. at 68, n.4, 656 P.2d at 1345, n.4. It behooves us to determine what facts the court had in mind.

In *McKinney,* the decedent rented a bathing suit from the defendant's public bathhouse and bathing pavilion and then drowned in the ocean fronting defendant's facilities.[4] In its opinion, the Florida Supreme Court stated:

> One will not be permitted to establish for profit a business of furnishing facilities and inviting persons to use public waters for bathing or swimming and to escape liability for injuries caused by the unsafe condition of the premises so used, of which unsafe condition the patron may not know or have due appreciation, but of which the proprietor of the business should know. The patron has a right to rely upon the due performance of the implied legal duty of the one furnishing the facilities and extending the implied invitation to use the premises to keep the same in a reasonably safe condition or to give due warning as to and protection against dangers. Though the waters are public and no governmental authority be expressly given to so offer them for use, one who assumes to so offer the use of the

---

[4]In *Geremia v. State,* 58 Haw. 502, 573 P.2d 107 (1977), the State had neither jurisdiction nor control over a portion of a watercourse called the Waipahee Slide. However, the supreme court stated that a non-occupier of land who "voluntarily undertook a course of affirmative conduct intended to induce the plaintiff to engage in an action, and also created a false appearance of safety upon which the plaintiff relied to his or her detriment" may be liable. *Id.* 58 Haw. at 508, 573 P.2d at 112. Because Geremia's estate failed to introduce any evidence that the State's affirmative conduct invited or induced Geremia to swim at the Waipahee Slide, the judgment in favor of the State was affirmed.

Thus, there are three distinct fact patterns:

1. The *Pickard v. City & County of Honolulu,* 51 Haw. 134, 452 P.2d 445 (1969), situation where the plaintiff or plaintiff's decedent was injured or killed on defendant's land or water. Ever since *Pickard,* Hawaii has "refused to recognize the common law distinctions between licensees and invitees and the different degree of care owed them by the occupier of land[.]" *Gibo v. City & County of Honolulu,* 51 Haw. 299, 301, 459 P.2d 198, 200 (1969).

2. The *McKinney, Tarshis, Kaczmarczyk,* and *Littleton* situation where the plaintiff or plaintiff's decedent went from defendant's land onto the adjoining public beach or ocean where he was injured or killed.

3. The *Geremia* situation where the defendant's land or water was not involved.

waters also assumes the legal duties and liabilities that are commensurate with such offer of the use. The nature of the use fixes the duties and correlative liabilities. An invitation may be implied from a continued and general custom in using the premises by the patrons of the business. The nature of the use and the extent of the premises covered by an implied invitation to use may be determined by the continued and general custom of the patrons of the place.

*Id.* 68 Fla. at 225-26, 66 So. at 992.

In *McKinney*, defendant operated a swimsuit rental business on property fronting the public beach and ocean. The plaintiff's decedent was defendant's business invitee. The accident occurred in the public ocean fronting the defendant's facilities. By renting the plaintiff's decedent a swimsuit, the defendant impliedly invited her to swim in the public ocean where the accident occurred.

In *Tarshis*, defendant operated a hotel fronting the public beach and ocean. The plaintiff was defendant's business invitee. The accident occurred in the public ocean fronting the defendant's premises. By operating a hotel fronting the public beach and ocean, the defendant impliedly invited the plaintiff to swim in the public ocean where the accident occurred.

In *Kaczmarczyk*, defendant operated a park fronting the public beach and ocean. We must assume that the plaintiff's decedent was the defendant's public invitee. The accident occurred in the public ocean fronting the defendant's park. By operating a public park fronting the public beach and ocean, the defendant may have impliedly invited the plaintiff's decedent to swim in the public ocean where the accident occurred.

In *Littleton*, defendant operated a park fronting the public beach and ocean. We must assume that the plaintiff was the defendant's public invitee. The accident occurred on the public beach fronting the fourth lot next to defendant's park. By operating a public park fronting the public beach and ocean, the defendant may have impliedly invited the plaintiff to walk upon the public beach where the accident occurred.

3.

Here, Marilyn was the State's public invitee on the KHP. The accident occurred on the Army's property fronting the public beach and ocean, which property was an undemarcated area surrounded by the

State's property. The question is whether, by operating a *de facto* public park partially fronting the public beach and ocean and surrounding the Army's *de facto* public park fronting the public beach and ocean, the State impliedly invited Marilyn and her infant son to use the Army's park where the accident occurred. That question is a genuine issue of material fact not subject to summary disposition.

4.

Accordingly, the November 27, 1984 summary judgment against Marilyn and in favor of the State is vacated, and the case is remanded for trial.

*Christopher J. Roehrig* (*Roehrig, Roehrig & Wilson* of counsel) (*Jeffrey Choi* and *Andrew S. Iwashita, Case, Kay & Lynch* of counsel, on the opening brief) for plaintiff-appellant.

*Ruth I. Tsujimura,* Deputy Attorney General, for defendant-appellee.