Charlene **RYGG**, et al., Plaintiff,

v.

**COUNTY OF MAUI**, et al., Defendant.

No. Civ. 98–874 ACK.

United States District Court, D. Hawaii.

Dec. 30, 1999.

James Krueger, Law Offices of James Krueger, Wailuku, HI, Frank B. Morrison, Jr., Morrisons McMarthy & Baraban, Whitefish, MT, for plaintiffs.

Kenneth S. Robbins, Vincent A. Rhodes, Honolulu, HI, Milton S. Tani, Wailuku, Maui, HI, for Maui, County of, defendant.

Ryan M. Akamine, Roeca Louie & Hiraoka, Honolulu, HI, for Aston Hotels & Resorts dba Aston at the Maui Banyan, defendant.

## ORDER DENYING DEFENDANT ASTON HOTELS & RESORTS' MOTION FOR SUMMARY JUDGMENT

KAY, District Judge.

### BACKGROUND

On December 4, 1998, plaintiffs Charlene Rygg, individually and as representative of the estate of Philip John Rygg, Adam E. Noble, Jeffrey W. Weyh, Rebecca Rygg, and Philip John Rygg, II (collectively "Plaintiffs"), filed a complaint against the County of Maui and Aston Hotels & Resorts. The complaint stems from an accident on March 13, 1998 that occurred in the waters directly offshore the Kamaole II Beach Park. On that day, Philip John Rygg was a guest of the Aston at the Maui Banyan, which is located on the mauka (mountain) side of South Kihei Road, across the street from Kamaole II Beach Park. While in the ocean, Philip John Rygg sustained a serious paralyzing injury that rendered him a quadriplegic. Plaintiffs allege that his death on May 28, 1998 was a result of the injuries he suffered in that accident. Plaintiffs seek to hold both the County of Maui and Aston Hotels & Resorts liable for negligently failing to warn of dangerous ocean conditions.

On August 4, 1999, Defendant Aston Hotels & Resorts ("Defendant") filed the instant motion for summary judgment; it subsequently filed a First Amended Concise Statement of Facts on October 12, 1999. Plaintiffs filed their opposition and Separate Concise Statement of Facts on October 20, 1999. Defendant filed a reply and a concise statement in support of its reply on October 28, 1999. Defendant County of Maui filed a statement of no opposition on October 21, 1999. The Court held a hearing on November 8, 1999.

During the hearing, the Court permitted both parties to file supplemental briefs addressing whether a landowner's duty to warn extends beyond the adjacent property. On November 22, 1999, Defendant filed a supplemental memorandum. On December 6, 1999, Plaintiffs filed their memorandum.

### STANDARD OF REVIEW

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c). The standard for summary adjudication is the same. *See State of Cal. v. Campbell,* 138 F.3d 772, 780 (9th Cir. 1998). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The United States Supreme Court has declared that summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *See id.* at 322, 106 S.Ct. 2548. "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact [citations omitted], the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987).

Rather, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *See id.* at 630. At least some "significant probative evidence tending to support the complaint" must be produced. *Id.* Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *See British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Ins. Co. of North America,* 815 F.2d 1285, 1289 (9th Cir.1987) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505.

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987). Moreover, the United States Supreme Court has stated that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Indeed, "if the factual context makes the nonmoving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics,* 818 F.2d at 1468 (emphasis in original) (citing *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348). Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *See T.W. Elec. Serv.,* 809 F.2d at 630–31.

### DISCUSSION

In the instant motion for summary judgment, Defendant contends that it did not owe or breach any duty to Plaintiffs and that Plaintiffs' claims are barred by H.R.S. § 486K–5.5, which provides:

*Hotelkeeper's liability limited for certain beach and ocean activities.* In a claim alleging injury or loss on account of a hazardous condition on a beach or in the ocean, a hotelkeeper shall be liable to a hotel guest for damages for personal injury, death, property damage, or other loss resulting from the hotel guest going onto the beach or into the ocean for a recreational purpose, including wading, swimming, surfing, body surfing, boogie boarding, diving, or snorkeling, only when such loss or injury is caused by the hotelkeeper's failure to warn against a hazardous condition on a beach or in the ocean, known, or which should have been known to a reasonably prudent hotelkeeper, and when the hazardous condition is not known to the guest or would not have been known to a reasonably prudent guest. A hotelkeeper owes no duty and shall have no liability for conditions which were not created by the hotel to a person who is not a guest of the hotel for injury or damage resulting from any beach or ocean activity.

As used in this section, "beach" means the beach fronting the hotel, and "hotel guest" means a guest of that particular hotel and other persons occupying the assigned rooms.

H.R.S. § 486K–5.5. Defendant argues that this statute abrogates any common law or negligence duties for beach and ocean accidents, and establishes liability of hotelkeepers under certain narrow circumstances, i.e., only when an accident occurs on a beach or in the ocean *fronting* the hotel itself. *See* Defendant's Motion, Aug. 4, 1999, at 5. In support of this argument, Defendant refers to the legislative history of the statute, which expresses the legislature's intent to limit the liability of hotels "who may find their economic position and reputation seriously eroded by a single tort claim made by a casual beach user who was not even a hotel guest." *Id.* at Exh. 3 (Conf.Comm.Rep. 60 on S.B. No. 2663).

Defendant emphasizes that the beach where Plaintiff Philip John Rygg was paralyzed was adjacent to and fronting Kamaole II Beach Park, a beach park owned

and/or operated by Defendant County of Maui. Defendant maintains that the beach in question does not "front" the Aston at the Maui Banyan, and that the hotel does not have any beach frontage whatsoever, because it is separated by both a road and Kamaole II Beach Park. Defendant therefore reasons that it is immune from liability under the statute and owed no duty to Plaintiffs.

Conversely, Plaintiffs contend that summary judgment is not appropriate. First, Plaintiffs argue that Defendant's hotel meets the requirements of § 486K–5.5. In this regard, Plaintiffs maintain that the Defendant's hotel does front the ocean for purposes of the statute and that the "minor geographic separation between a hotel and a beach is not a legally sufficient factual circumstance to nullify existence of the applicable statutory duty." Plaintiffs' Opposition, Oct. 20, 1999, at 5. Alternatively, Plaintiffs contend that regardless of H.R.S. 486K–5.5, Hawaii case law provides that Defendant owed a duty to Plaintiffs to warn of dangerous conditions in the ocean. Plaintiffs argue that a landowner's duty to his invitees extends to places where they are reasonably expected to go during the course of a visit, including premises other than the landowners. As further support for this argument, Plaintiffs also assert that Defendant owed Plaintiffs a duty to warn of dangerous conditions in the ocean offshore Kamaole II Beach Park because it had a special innkeeper-guest relationship.

## I DEFENDANT'S HOTEL DOES NOT "FRONT" THE BEACH WITHIN THE MEANING OF H.R.S. § 486K–5.5.

▇ The Court finds that Defendant's hotel does not front the beach within the meaning of the statute. In reaching this conclusion, the Court first looks to the plain language of H.R.S. § 486K–5.5.[1] The statute limits the liability of hotels that front the beach in two ways. First, it requires them to warn against a hazardous condition on the beach or in the ocean that the hotel knew or should have known about and that a reasonable guest would not have known about; second, it immunizes hotels from liability arising from injuries suffered by non-guests on the beach or the ocean fronting the hotel. *See* H.R.S. § 486K–5.5. The statute expressly defines "beach" to mean "the beach fronting the hotel." *Id.* The Court finds as a matter of law that the Aston at the Maui Banyan does not "front" the beach within the meaning of the statute. Black's Law Dictionary defines "fronting and abutting" to mean "[v]ery often, 'fronting' signifies abutting, adjoining, or bordering on, depending largely on the context." *Black's Law Dictionary* 669 (6th ed.1990). Therefore, the Court will examine the context in which the term is used.

Although § 486K–5.5 does not use terms such as "contiguous" or "adjacent," the Court finds that the use of the term "fronting" clearly requires that the hotelkeeper's property adjoin or otherwise be contiguous with the beach. This conclusion is reinforced by another part of the statute that states that a "hotelkeeper owes no duty and shall have no liability for conditions which were not created by the hotel to a person who is not a guest of the hotel for injury or damage resulting from any beach or ocean activity." H.R.S. § 486K–5.5. In other words, this part of the statute is geared to eliminating a hotel's liability for injuries incurred by casual passersby on the beach who have no nexus with the hotel itself. *See* Defendant's Motion, Aug. 4, 1999, at Exh. 3 (Conf.Comm. Rep. 60 on S.B. No. 2663) ("While injuries received at our beaches can be traumatic and costly to victims and their families, without a limitation of liability hotels may find their economic position and reputation seriously eroded by a single tort claim

---

1. The Court notes that Hawaii courts have yet to decide any cases involving this statute, which was recently enacted in 1994.

made by a casual beach user who was not even a hotel guest."). Therefore, if this statute applied to hotels that are not contiguous, abutting, or otherwise adjacent to the beach, then this limitation would be superfluous as applied to those non-contiguous hotels because it is highly unlikely that any cause of action (arising from a non-guest's injury on the beach or in the ocean) would have accrued against the non-contiguous hotel in the first place. Thus, the context of this statute demonstrates that it applies only to hotels that are contiguous with the beach.

Furthermore, the use of "fronting" and its derivatives in various Hawaii court decisions connotes property that is contiguous to the beach. *See, e.g., Tarshis v. Lahaina Investment Corp.*, 480 F.2d 1019, 1020, 1021 (9th Cir.1973) (referring to the beach and the ocean "fronting" the property; such property was contiguous with the beach); *Kamakawiwoole v. State*, 6 Haw. App. 235, 239–40 (1986) ("[O]perating a de facto public park partially fronting the public beach and ocean and surrounding the Army's de facto public park fronting the public beach and ocean . . .;" both de facto public parks were contiguous with the beach); *Kaczmarczyk v. City and County of Honolulu*, 65 Haw. 612, 615, 656 P.2d 89 (1982) (citing *Tarshis* for the proposition that where "the premises front upon the ocean, this responsibility extends to those swimming in the waters along the property's beach frontage").

In this case, the Court emphasizes that not only does South Kihei Road lie between the hotel and the ocean, but Kamaole II Beach Park also lies on the makai (ocean) side of South Kihei Road between the hotel and the ocean. In reaching its conclusion that the hotel does not front the beach, the Court notes that Plaintiffs have failed to offer any limiting principle to support their interpretation that it is sufficient that the hotel in question face the beach, albeit from some distance. If the presence of a road and a county-operated

beach park do not prevent a hotel from fronting the beach, then what would suffice? A hotel that is located several blocks from the ocean but which is a comfortable walk to the beach? A hotel that is very close to the beach but has another building owned by someone else between it and the beach? For these reasons, the Court finds that it is clear that the Aston at the Maui Banyan does not "front" the beach within the meaning of § 486K–5.5 because it is not contiguous with the beach. Thus, Defendant was not protected by the limitations on liability contained in the statute.

## II *H.R.S. § 486K–5.5 DOES NOT ABROGATE DEFENDANT'S COMMON LAW DUTIES.*

Plaintiffs argue that even if Defendant is not liable under H.R.S. § 486K–5.5, liability still attaches under the common law. Specifically, Plaintiffs maintain that Hawaii case law establishes that Defendant owed them a duty to warn of unsafe conditions at the nearby beach, even though the beach itself was owned and/or operated by the County of Maui.[2] According to Plaintiffs, "[i]t is black letter law throughout the country that a landowner's duty to his invitees extends to places where they are reasonably expected to go during the course of a visit, including premises other than the landowners." Plaintiffs' Opposition, Oct. 20, 1999, at 7.

Plaintiffs point to *Kamakawiwoole v. State of Hawaii*, 6 Haw.App. 235, 718 P.2d 1105 (1986), in which the Hawaii Intermediate Court of Appeals held that the State owed a duty to warn a plaintiff who injured herself on the Army's nearby property. The court held that it was foreseeable that she might leave the State's property and venture onto the Army's property, particularly given the fact that there was no demarcation between the State's property and the Army's property. Furthermore, Plaintiffs claim that *Littleton v. State of Hawaii*, 66 Haw. 55, 656

---

**2.** Under Hawaii law, the State owns the land     on the beach up to the high water mark.

P.2d 1336 (1982), is the most factually apposite case. In that case, the Hawaii Supreme Court held that the City had a duty to warn plaintiff of dangerous ocean conditions even though the plaintiff's injury occurred in the ocean fronting private property. The court emphasized that liability attached because the plaintiff had approached the ocean through a public park before subsequently walking beyond the park's boundaries.[3]

Defendant's efforts to distinguish these two cases are not persuasive. With regard to *Kamakawiwoole*, Defendant merely contends that, unlike the instant case, it involved premises within the control of the defendant. The Court disagrees. The relevant question in the instant case is not whether Defendant controlled the beach, but whether Defendant owed a duty to warn its guests of known or knowable dangers on the beach. In *Kamakawiwoole*, although the Army's property was completely enclosed by either the State's property or the ocean itself, there is no indication in the decision that the State actually controlled the Army's property (the plaintiff was injured when she slipped on the Army's landing ramp). At most, the State could observe the Army's property from its own property. The Court found that the question whether the State had impliedly invited the public to use the Army's property where the accident occurred precluded summary judgment. *See Kamakawiwoole*, 6 Haw.App. at 240, 718 P.2d 1105. The same question whether Defendant impliedly invited its guests to use the beach arises in the instant case, where Defendant's brochure depicts a couple walking along a beach, notes that the hotel is "[a]cross from Kamaole Beach Park," and states that "[w]e're ideally located in Kiehi on Maui's sunny south coast, overlooking the golden sands of Kamaole Beach Park II." Plaintiffs, Opposition, Oct. 20, 1999, at Exh. B.

With regard to *Littleton*, Defendant argues that the plaintiff was injured by a telephone pole floating offshore and not by the ocean itself, and that this constitutes a relevant distinction. The Court is not convinced by this purported distinction, particularly in light of the fact that telephone poles and other large logs were regularly seen in the waters in that same vicinity and consistently created the same dangerous conditions. *See Littleton*, 66 Haw. At 59. In the instant case, it is up to the jury to determine whether Defendant knew or should have known of the dangerous ocean conditions at Kamaole II Beach Park and, if so, whether it fulfilled its duty to warn its guests.

■ The Court recognizes that these decisions predate H.R.S. § 486K–5.5, thereby raising the question whether the statute abrogates the common law duty to warn of ocean-related dangers that were known or knowable to the hotel but which were not known or obvious to persons of ordinary intelligence. Not surprisingly, Defendant makes this exact contention— namely, that the statute abrogates the liability of all hotelkeepers for ocean-related injuries. However, the Court is not persuaded by this argument. As discussed above, the purpose of the statute is to limit the liability of hotels fronting the beach. In this regard, the Court notes that the language of the statute limits the statute's applicability to hotels that "front" the beach. As previously discussed, the Aston at the Maui Banyan does not front the beach for purposes of the statute. Thus,

---

**3.** Plaintiffs also cite *Tarshis v. Lahaina Investment Corp.*, 480 F.2d 1019, 1020 (9th Cir. 1973), for the proposition that a hotel owed its guest "the duty to warn her of dangerous conditions in the Pacific Ocean along its beach frontage which were not known to her or obvious to an ordinarily intelligent person and either were known or in the exercise of reasonable care ought to have been known to the [hotel]." However, the holding in *Tarshis* appears to have been legislatively overridden by H.R.S. § 486K–5.5 because the hotel in *Tarshis* actually fronted the beach. Thus, were it to reoccur today, the *Tarshis* decision would clearly fall within the terms of the statute.

the terms of the statute itself do not include Defendant.

Furthermore, Plaintiffs correctly point out that the only substantive limitation on liability contained in the statute is the fact that a beachfront hotel is no longer liable for injuries incurred by casual passersby who have no nexus with the hotel. *See* Plaintiffs' Opposition, Oct. 20, 1999, at 4. In all other respects, the general duty to warn guests incorporated in H.R.S. § 486K–5.5 essentially reflects the standard laid out in *Tarshis.* Compare H.R.S. § 486K–5.5 (a hotelkeeper shall be liable "only when such loss or injury is caused by the hotelkeeper's failure to warn against a hazardous condition on a beach or in the ocean, known, or which should have been known to a reasonably prudent hotelkeeper, and when the hazardous condition is not known to the guest or would not have been known to a reasonably prudent guest") *with Tarshis,* 480 F.2d at 1020 (holding that a hotel owed its guest "the duty to warn her of dangerous conditions in the Pacific Ocean along its beach frontage which were not known to her or obvious to an ordinarily intelligent person and either were known or in the exercise of reasonable care ought to have been known to the [hotel]").

■ Because the Court is satisfied that this reading is plain on the face of the statute, the Court need not consider the legislative history of the statute. *See Oregon Natural Resources Council, Inc. v. Kantor,* 99 F.3d 334, 339 (9th Cir.1996) (noting that if the language of a statute is clear, the Court looks no further in determining its meaning, unless the apparent plain meaning leads to an absurd or impracticable result); *United States v. Ne-*

*ville,* 985 F.2d 992, 995 (9th Cir.1993) (determining that if the statute is clear and unambiguous, there is no need to turn to legislative history); *Coalition for Clean Air v. Southern Cal. Edison Co.,* 971 F.2d 219, 227 (9th Cir.1992) ("[T]here is no need to refer to the legislative history of a statute when the language of the statute is clear."). The Court will nevertheless look to the legislative history of H.R.S. § 486K–5.5 for evidence of legislative intent to the contrary of the plain meaning of the statute.[4]

The Court concludes that the legislative history reinforces this conclusion. Although relatively limited, the legislative history indicates that the purpose of the bill was to limit the liability for hotelkeepers arising from certain beach and ocean activities to the hotelkeeper's guests and not to the public at large. *See* Conf. Comm.Rep. 60 (Haw.1994), located in 1994 House Journal at 807 ("[W]ithout a limitation of liability hotels may find their economic position and reputation seriously eroded by a single tort claim made by a casual beach user who was not even a hotel guest."); Senate Judiciary Comm. Rep. 2414 (Haw.1994), located in 1994 Senate Journal at 978 ("The purpose of the bill is to clarify that the liability of hotels with regard to the risk and dangers involved in certain beach and ocean activities is limited to the hotelkeeper's guests and not to the public at large."); House Judiciary Comm.Rep. 1435–94 (Haw.1994), located in 1994 House Journal at 1452 ("Regarding the issue of liability of hotels, the testimony and discussion touched upon the concern that hotels should be responsible to guests and not to the casual passerby on the beach who has no nexus with the ho-

---

4. The Supreme Court has noted that where the language of a statute is plain, the Court must abide by it, looking only to legislative history to determine if it reflects a clearly expressed legislative intention contrary to the plain meaning of the statute:

[Where] the plain language of this statute appears to settle the question before us … we look to the legislative history to deter-

mine only whether there is "clearly expressed legislative intention" contrary to that language, which would require us to question the strong presumption that Congress expresses its intent through the language it chooses.

*INS v. Cardoza–Fonseca,* 480 U.S. 421, 432 n. 12, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987).

tel.").  There is no indication whatsoever that the legislature intended to eliminate all liability for ocean-related injuries for non-beachfront hotels, or even that beachfront hotels should have no liability for ocean-related injuries that occur on the beach fronting their premises.

■ Finally, the Court is mindful that statutes in derogation of the common law are to be interpreted narrowly.  *See Kasza v. Browner,* 133 F.3d 1159, 1167 (9th Cir. 1998) (" '[S]tatutes which invade the common law ... are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident.' ") (quoting *United States v. Texas,* 507 U.S. 529, 534, 113 S.Ct. 1631, 123 L.Ed.2d 245 (1993)).  Absent a more explicit statement from the Hawaii legislature, the Court is reluctant to conclude on the evidence before it that H.R.S. § 486K–5.5 completely immunizes Defendant from all liability arising from beach- and ocean-related injuries incurred by its guests.  Thus, summary judgment is not appropriate because "what is reasonable and unreasonable and whether the defendant's conduct was reasonable in the circumstances are for the jury to decide."  *Knodle v. Waikiki Gateway Hotel, Inc.,* 69 Haw. 376, 384, 742 P.2d 377 (1987).

## III *THE COMMON LAW DUTY TO WARN EXTENDS BEYOND IMMEDIATELY ADJACENT PROPERTY.*

■ During the hearing on the instant motion, Defendant argued that a landowner's duty to warn of known or knowable dangers extends only to property immediately adjacent to the landowner's property.[5]  In essence, Defendant maintains that the common law duty to warn contains a geographical restriction that is not met in the instant case.  In its supplemental

brief, Defendant points out that the injuries in *Tarshis, Kaczmarczyk,* and *Littleton* occurred on property owned or immediately fronting the defendant's property.  *See Tarshis,* 480 F.2d at 1020 (plaintiff injured by wave in the ocean fronting the hotel); *Kaczmarczyk,* 65 Haw. at 615, 656 P.2d 89 (plaintiff drowned in ocean fronting the City's beach park); *Littleton,* 66 Haw. at 56–57, 656 P.2d 1336 (plaintiff injured by telephone pole in ocean after walking along the beach immediately fronting the City's beach park).  Defendant also argues that extending liability for beach- and ocean-related injuries that occur on premises not immediately adjacent to the hotel would violate Hawaii's public policy and "virtually hamstring the tourist industry, the heart and soul of Hawaii's economy."  Defendant's Supplemental Memorandum, Nov. 22, 1999, at 9.  Thus, Defendant concludes that a hotel has no duty to warn guests of dangerous conditions along beach areas that do not front the hotel.

Plaintiffs dispute this argument.  Plaintiffs argue that the common law duty to warn is not geographically circumscribed, but instead is predicated upon the foreseeability of harm.  Thus, Plaintiffs contend that the duty to warn extends to such places in or about the hotel's premises as the hotel's guests may be reasonably expected to go during their visit.  *See* Plaintiffs' Supplemental Memorandum, Dec. 6, 1999, at 3.

■ The Court concludes that Plaintiffs' arguments correctly state the law in Hawaii.  In *Geremia v. State,* 58 Haw. 502, 573 P.2d 107 (1977), plaintiff drowned on a natural water slide located on private property.  The decedent's parents sued both the landowner as well as the State of Hawaii, which had improved a parking area and trail that led to the water slide with the landowner's permission.[6]  *See id.*

---

5. The Court granted Defendant's request to provide supplemental briefing as to this issue, gave Defendant two weeks to file its brief, and

gave Plaintiffs an additional two weeks to respond to Defendant's brief.

6. The water slide was located an unspecified distance from the parking lot.

at 504, 573 P.2d 107. In discussing the State of Hawaii's liability, the Hawaii Supreme Court stated:

Circumstances may exist in which a non-occupier must take cognizance of dangerous conditions existing on the land of another in discharging a duty of care which he owes a third person. The existence of such a dangerous condition, although not under the control of the actor, may be the fact which renders negligent an otherwise blameless act.

*Id.* at 506, 573 P.2d 107. Thus, the Supreme Court of Hawaii held that one who gratuitously acts so as to expose another to danger must observe ordinary care in so doing, even if he would have been wholly free from obligation if he had refrained from acting, and that he would be liable if he created a false appearance of safety on which the other relies to his or her detriment. *See id.* at 506–07, 573 P.2d 107. The court ruled that the status of an occupier of land is not a prerequisite to the existence of an independent duty on the part of one who voluntarily undertakes a course of affirmative conduct intended to induce another to engage in an action on land occupied by a third person and on which a known dangerous condition exists, to exercise ordinary care to avoid creating a false impression of safety. *See id.* at 508, 573 P.2d 107.[7]

In *Littleton,* the Hawaii Supreme Court summarized the common law rule that "an owner's duty to his invitees extends to such places in or about the premises as his invitees may reasonably be expected to go in the course of the visit." *Littleton,* 66 Haw. at 68, 656 P.2d 1336 (citations omitted). In deciding that the City could be held liable for failing to warn an individual who wandered along the beach beyond the City's beach park past three privately owned residential properties and was injured by a log in the water, the court focused on whether it was foreseeable that the plaintiff would have wandered along the beach beyond the geographical beach limits of the park itself. "[I]t would be unreasonable for the City to expect that those to whom it invited to use its park and beach facilities would confine their activities strictly within the beach and waters along and adjacent to the park's beach frontage." *Id.* at 68, 656 P.2d 1336. Consequently, the Hawaii Supreme Court determined that whether the City "induced, or by its conduct invited, the plaintiff to use the adjoining beach areas is a question of fact which must be determined by the jury from the circumstances." *Id.* at 68–69, 656 P.2d 1336; *see also Kamakawiwoole v. State,* 6 Haw.App. 235, 240, 718 P.2d 1105 (1986) (holding that jury must decide whether the State impliedly invited beach users to use the U.S. Army's adjacent, de facto public park fronting the ocean, and therefore owed a duty to warn of known or knowable dangers).

In the instant case, Plaintiffs have proffered evidence from which a reasonable jury might conclude that it was foreseeable that Plaintiffs and other hotel guests might go to Kamaole II Beach Park. In particular, Plaintiffs repeatedly point to Defendant's brochure, which touts the hotel's location "overlooking the golden sands of Kamaole Beach Park II." Plaintiffs' Opposition, Oct. 20, 1999, at Exh. B. The Court cannot find as a matter of law that it was not foreseeable to Defendant that its hotel guests might go to Kamaole II Beach Park and be injured there by dangers of which Defendant knew or should have known.

Furthermore, the Court rejects Defendant's argument that this outcome violates the State of Hawaii's public policy. Defendant's liability is limited by the common law requirement that the injury must have been foreseeable. Defendant's assertions that hotels will have to imprison their

---

7. The Hawaii Supreme Court did not impose any sort of geographical limitation in this case.

guests to avoid liability is unfounded.[8] Accordingly, the Court DENIES Defendant's motion for summary judgment.[9]

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion for summary judgment.

IT IS SO ORDERED.

**8.** The two cases cited by Defendant do not warrant a contrary conclusion. In *Johnston,* the Hawaii Supreme Court refused to extend liability to encompass a social host who served alcohol to an individual who later drove drunk and injured the plaintiff. *See Johnston v. KFC National Management Company,* 71 Haw. 229, 788 P.2d 159 (1990). In *Jones,* a plaintiff sued a hotel after he injured himself diving from a seawall on the hotel's property. *See Jones v. Halekulani Hotel, Inc.,* 557 F.2d 1308 (9th Cir.1977). The Ninth Circuit affirmed the district court's decision that the public had obtained an easement to travel along the seawall, finding that because the hotel had no right to control the use of the public thoroughfare, it had no duty to maintain the seawall. *See id.* at 1311. Neither of these cases support Defendant's argument that holding hotels liable for foreseeable injuries that occur on or near their property violates Hawaii's public policy.

**9.** Defendant raises two other arguments in its supplemental brief. Defendant argues that a hotel has no duty to warn a guest of dangers in the ocean fronting the hotel, citing three non-Hawaii cases. However, none of these cases reflect Hawaii's statutory and common law which, as previously discussed, hold a hotelkeeper liable for foreseeable dangers to hotel guests that occur in the ocean fronting the hotel.

Defendant also argues that a landowner's duty to warn is limited to his own property and does not extend beyond those premises, citing three Hawaii cases where the injury occurred on the landowner's property. *See*

*Friedrich v. Department of Transp.,* 60 Haw. 21 (1978); *Farrior v. Payton,* 57 Haw. 620, 562 P.2d 779 (1977); *Pickard v. City and County of Honolulu,* 51 Haw. 134, 452 P.2d 445 (1969). This contention contravenes Hawaii law. None of these cases expressly, or even implicitly, limited liability to those injuries occurring on one's property; this question was not even addressed because the injuries occurred on the landowner's property. Moreover, any suggestion by Defendant to the contrary is defeated by the Hawaii Supreme Court's decision in *Littleton,* which held that the City could be held liable for injuries occurring outside its beach park. In *Littleton,* the plaintiff was injured after she left the City's beach park, walked along the beach past three residential properties, and then was struck by a log in the ocean. The Hawaii Supreme Court held that it was a question of fact whether the City induced, or by its conduct invited, the plaintiff to use the areas outside the boundaries of the City's beach park. *See Littleton,* 66 Haw. 55, 68–69, 656 P.2d 1336; *see also Kamakawiwoole,* 6 Haw. App. at 240, 718 P.2d 1105 (holding that it was a question of fact whether the State impliedly invited the plaintiff, who was using the State's de facto beach park, to also use the Army's landing ramp where she was injured).

The Court has not been asked to consider, and the Court has not addressed, whether Defendant would have the right to rely on the County of Maui's signs, or whether Defendant would have a right to recover from the County if the County's sign was determined to be inadequate.