NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000443
31-MAR-2022
12:58 PM
Dkt. 150 SO**

NO. CAAP-17-0000443

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

VAUGHN STEPHENS and DENISE STEPHENS,
Plaintiffs-Appellants,
DENISE STEPHENS as Next Friend for J.S., a minor,
and KYLE STEPHENS, Plaintiffs-Appellees v.
FAIRMONT HOTELS & RESORTS, INC.,
dba THE FAIRMONT KEA LANI MAUI, Defendant-Appellee, and
JOHN DOES 1-5, JOHN DOE CORPORATIONS 1-5,
JOHN DOE PARTNERSHIPS 1-5, ROE NON-PROFIT CORPORATIONS 1-5,
AND ROE GOVERNMENTAL AGENCIES 1-5, Defendants.

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CIVIL NO. 2CC141000447)

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Hiraoka and McCullen, JJ.)

Plaintiffs-Appellants Vaughn Stephens (**Stephens**) and

Denise Stephens appeal from the Circuit Court of the Second

Circuit's (**Circuit Court**) May 19, 2017 Order Granting

Defendant-Appellee Fairmont Hotels and Resorts (U.S.), Inc.'s

(**Fairmont**) Motion for Summary Judgment and Final Judgment.[1]

---

[1] The Honorable Rhonda I.L. Loo presided.

On appeal, Stephens summarizes his six points of error in the following order:[2]

1. "The lower court erred in finding that [Fairmont]'s failure to follow its policy about how to advise a guest inquiring about an alternative beach to visit did not constitute a breach of duty owed to Stephens";

2. "The lower court erred in finding that [Fairmont] did not owe a common law duty respecting ocean hazards to Stephens";

3. "The lower court erred in finding that [Fairmont] owed no duty respecting an off-premises hazard (Makena) to Stephens";

4. "The lower court erred in finding that no special relation duty was owed by [Fairmont] to Stephens";

5. "The lower court erred in finding that [Fairmont] did not voluntarily assume any duty to Stephens respecting advising Stephens concerning alternative beaches to which they might go which duty was not non-negligently performed"; and

6. "The lower court erred in dismissing all of Stephens' various causes of action, in breach of its Rule 56(d) [Hawaiʻi Rules of Civil Procedure (**HRCP**)] mandate, when the only real thrust of hotel's requested motion was predicated on an alleged off-premises warning restriction and there existed other breach of duties claimed as mentioned above."

## I. BACKGROUND

### A. Factual Background

While vacationing on the island of Maui, Stephens and his family were staying at the Fairmont Kea Lani Resort. More than three miles from the Resort was Mākena State Park's Big

---

[2] Stephens's points of error do not directly correspond with his arguments as numbered. We address the issues on appeal as they are ordered in the summary of the argument section of Stephens's opening brief.

Beach.  The State of Hawaiʻi owned the park, and the County of Maui provided ocean safety officers for the park.

On August 6, 2012, Stephens approached an unidentified Fairmont employee and asked him "where was a good beach to go to as a family."  In response to Stephens's inquiry, the unidentified employee suggested Big Beach and provided Stephens with driving directions.  Stephens and his family then drove to Mākena State Park, parked in a lot adjacent to Big Beach, and situated themselves close to a lifeguard tower marked "14A."

That day, the walkway connecting the northernmost parking area with Big Beach itself contained a permanent "Dangerous Shore break" sign stating, **"WARNING,"** in bold font above a pictogram of a person upside-down after colliding with a wave.  Text below the pictogram stated, "Waves break in shallow water[.] Serious injuries could occur, even in small surf[.] **IF IN DOUBT, DON'T GO OUT."**  A second identical "Dangerous Shorebreak" sign was also located on the beach itself, about halfway between the terminus of the access way and the ocean.

In addition to those warnings, lifeguards in Towers 14A and 14B placed "Dangerous Shorebreak" signs with red flags throughout the beach area.  That day in particular, there were four additional shorebreak warning signs next to Tower 14A — two to the left and two to the right of the tower, each with a red flag.[3]

The lifeguards also made shorebreak-warning announcements on the public-address (**PA**) system.  A typical warning would say, "Be advised we do have warning signs posted:

---

[3]  Tower 14B had five additional warning signs.

Dangerous shorebreak. Dangerous shorebreak is waves breaking in shallow to no water and can cause serious injuries. If you're not familiar with these types of ocean conditions, please stay out of the water." Tower 14A made at least four announcements on the day Stephens was injured, at 10:24 a.m., 10:55 a.m., 1:33 p.m, and 3:18 p.m. Stephens claimed he did not remember hearing the warning announcements, and did not see the warning signs along the path, near the parking lot, or on the beach.

After some time lounging on the sand, Stephens waded into the water to join his family, who entered before him. Stephens bobbed in the waves for approximately ten minutes before deciding to head back to shore. As he began a half-walk, half-breaststroke towards the shore, a breaking wave struck him from behind, causing his head to strike the sandy bottom of the ocean. Stephens's neck hyperextended, resulting in permanent paralysis. The Ocean Safety Captain's Daily Service Log recorded Stephens's time of injury as 3:45 p.m.

**B. Procedural Background**

Stephens filed a second amended complaint alleging he suffered a paralyzing injury in the shorebreak at Big Beach because an unidentified Fairmont employee negligently recommended that beach without providing any warnings of its ocean hazards. After the parties conducted extensive discovery, Fairmont moved for summary judgment (**MSJ**) asserting that, as a matter of law, it had no duty to warn Stephens of the shorebreak at Big Beach because the beach was located miles away and was not affiliated with, or under the control of, Fairmont. In the alternative, Fairmont asserted that the shorebreak warnings present at Big

Beach complied with Hawaii Revised Statutes (**HRS**) § 663-1.56 (2016)[4] and, thus, warned Stephens of the danger he ultimately faced.

Stephens also moved for summary judgment, and argued: (1) innkeepers have an enhanced duty to warn its guests of foreseeable dangers regardless of geographic location; (2) even if Fairmont did not have a duty to warn, it assumed that duty by negligently recommending Big Beach to Stephens; and (3) the shorebreak warning signs were irrelevant under the facts of this case.

Following a hearing on these motions, the Circuit Court granted Fairmont's MSJ. It concluded, under the circumstances of this case, Fairmont "had no general duty to warn its guests of dangers well beyond Fairmont Resort's properties[.]" And the

---

[4] Rather than referring to HRS § 663-1.56, Fairmont refers to Act 190, entitled "A Bill for an Act Relating to Public Land Liability Immunity," which was enacted in 1996 and codified in part as HRS § 663-1.56 to "establish a process in which the State and counties can provide both meaningful and legally adequate warnings to the public regarding extremely dangerous natural conditions in the ocean adjacent to public beach parks." 1996 Haw. Sess. Laws Act 190, at 434–37.

HRS § 663-1.56 regulates the postings of warning signs and limits the government's liability for dangerous ocean condition, providing in pertinent part as follows:

> (a) The <u>State or county operating a public beach park shall have a duty to warn the public specifically of dangerous shorebreak</u> or strong current in the ocean adjacent to a public beach park if these conditions are extremely dangerous, typical for the specific beach, and if they pose a risk of serious injury or death.

> (b) <u>A sign or signs warning of dangerous shorebreak or strong current shall be conclusively presumed to be *legally adequate* to warn of these dangerous conditions</u>, if the State or county posts a sign or signs warning of the dangerous shorebreak or strong current and the design and placement of the warning sign or signs has been approved by the chairperson of the board of land and natural resources. The chairperson shall consult the governor's task force on beach and water safety prior to approving the design and placement of the warning sign or signs.

HRS § 663-1.56(a) and (b) (emphases added).

Circuit Court rejected Stephens's argument that Fairmont assumed a duty to warn by recommending Big Beach to Stephens, because Fairmont's unidentified employee "made no representations or guarantees concerning safety." Finally, the Circuit Court concluded that even if Fairmont had a duty to warn or assumed a duty to warn, "there can be no liability as a matter of law," because warnings were posted at Big Beach on the day in question, and those warnings complied with HRS § 663-1.56.[5]

The Circuit Court entered judgment in favor of Fairmont and against Stephens, resolving all claims in Stephens's Second Amended Complaint. This appeal followed.

## II. STANDARD OF REVIEW

We apply the same standard that the trial court used in ruling on a motion for summary judgment. Beamer v. Nishiki, 66 Haw. 572, 577, 670 P.2d 1264, 1270 (1983) (citation omitted). We thus review "a circuit court's grant or denial of summary judgment motion *de novo*." Lansdell v. Cty. of Kauai, 110 Hawaiʻi 189, 194, 130 P.3d 1054, 1059 (2006) (citation omitted). The standard for granting a motion for summary judgment is as follows:

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The

---

[5] Stephens does not challenge this conclusion on appeal. Notably, in his reply brief, Stephens admits that "[t]here were plenty of warnings at the beach when [he] got there." See Gonsalves v. First Ins. Co. of Hawaii, Ltd., 55 Haw. 155, 161, 516 P.2d 720, 724 (1973) (explaining that the "admissions in the brief of the party opposing the motion for summary judgment may be used in determining that there is no genuine issue as to any material fact, since they are functionally equivalent to admissions on file, which are expressly mentioned in [HRCP] Rule 56(c)") (cleaned up).

> evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

Hawaii Cmty. Fed. Credit Union v. Keka, 94 Hawaiʻi 213, 221, 11 P.3d 1, 9 (2000) (cleaned up).

### III. DISCUSSION

On appeal, Stephens raises six points of error, the gist being that Fairmont had a duty to warn of the shorebreak at Big Beach and breached that duty.

> The existence of a duty, that is, whether such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other — or, more simply, whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant, is entirely a question of law.

Bidar v. Amfac, Inc., 66 Haw. 547, 552, 669 P.2d 154, 158 (1983) (cleaned up). We address Stephens's points in order.

### A. Summarized Deposition Excerpts Were Inadmissible.

Stephens contends that the Circuit Court "erred in finding that hotel's failure to follow its policy about how to advise a guest inquiring about an alternative beach to visit did not constitute a breach of duty owed to" him. To support this contention, he cites to summarized deposition excerpts "attached" to his motion in opposition to Fairmont's MSJ.

These excerpts, which contained certain Fairmont employees' personal opinions about Big Beach and its shorebreak, were not sworn to or authenticated. Seventeen exhibits and four attachments were included in Stephens's motion in opposition to Fairmont's MSJ. Stephens's attorney's declaration, however, only attested to the authenticity of the listed exhibits. No reference was made to attachments "2" and "4" that contained the excerpts. The excerpts, therefore, were not admissible. See

7

HRCP Rules 30(b)(6) and 56(e); <u>Freddy Nobriga Enters., Inc. v. State, Dep't of Hawaiian Home Lands</u>, 129 Hawaiʻi 123, 128, 295 P.3d 993, 998 (App. 2013) ("It is well settled that a motion for summary judgment may be decided only on the basis of admissible evidence. To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of [HRCP Rule 56(e)].") (cleaned up). And even if the deposition excerpts were admissible, an alleged internal policy alone does not create a legal duty. See <u>Dowkin v. Honolulu Police Dep't</u>, Civil No. 10-00087 SOM/RLP, 2012 WL 3012643, at *4 (D. Haw. July 23, 2012) (explaining that an internal policy, as opposed to a statute, ordinance, or regulation, does not create a legal duty).

**B.    <u>Tarshis</u> Was Not A Basis For Finding That Fairmont Owed A Duty To Warn.**

Stephens contends that the Circuit Court "erred in finding that hotel did not owe a common law duty respecting ocean hazards to" him. To support his contention, Stephens argues <u>Tarshis v. Lahaina Inv. Corp.</u>, 480 F.2d 1019 (9th Cir. 1973), "establish[es] that a beachfront hotel ha[s] a duty to warn its guests of dangerous ocean conditions existing in the ocean fronting the hotel premises." Stephens then asserts that "[t]his law forms historic predicate for the duty owed by" Fairmont to him because Fairmont "owed [him] a duty to protect [him] against unreasonably dangerous conditions - such as shorebreak fronting its premises."

In <u>Tarshis</u>, the plaintiff admittedly saw red flags warning of dangerous surf on the beach fronting the hotel but saw only slight waves at the time, so she went into the ocean.

480 F.2d at 1020. The trial court granted summary judgment in favor of the hotel because "the dangers inherent in swimming in the ocean on the day of the accident should have been known to the appellant as an ordinarily intelligent person and hence appellee was under no duty to warn appellant of the dangerous surf conditions." Id. (brackets and internal quotation marks omitted).

Vacating the trial court's decision, the United States Court of Appeals, Ninth Circuit approved as a correct statement of law that the hotel had a "duty to warn her of dangerous conditions in the Pacific Ocean along its beach frontage which were not known to her or obvious to an ordinarily intelligent person and either were known or in the exercise of reasonable care ought to have been known to the" hotel. Id. (internal quotation marks omitted). The Ninth Circuit then held that the issue of "[w]hether or not the ocean fronting appellee's property would have appeared dangerous to an ordinarily intelligent person is a question of fact inappropriate for summary adjudication." Id. at 1021.

In stark contrast to the beach fronting the hotel in Tarshis, Big Beach was located over three miles away from Fairmont. And Stephens's attempt to extend the hotel's duty as found in Tarshis from beaches fronting the hotel to beaches over three miles away based on "unreasonably dangerous conditions" is an illogical leap. Tarshis, thus, does not provide a basis for concluding that Fairmont owed Stephens a duty to warn of the shorebreak at Big Beach. Cf. Jones v. Halekulani Hotel, Inc., 557 F.2d 1308, 1311 (9th. Cir. 1977) (distinguishing Tarshis and

9

finding that a hotel had no duty to protect someone who was injured diving from a seawall owned by the hotel but used as a public easement "[b]ecause the hotel had no right to control the use of the public thoroughfare . . . [and] [i]t is inequitable to impose a duty of maintenance on one without authority to control use").

**C.    Restatement (Second) Of Torts § 314A Was Not A Basis For Fairmont Owing a Legal Duty to Stephens.**

Stephens contends that the Circuit Court erred "in finding that no special relation duty was owed by Hotel to" him. According to Stephens, he and Fairmont had a special relationship under § 314A of the Restatement (Second) of Torts (1965), and based on that special relationship, Fairmont had a duty to "take reasonable action to protect [him] against an unreasonable risk of harm."

The Restatement (Second) of Torts § 314A(1)(a) and (2) (1965) provides that an innkeeper has a duty to its guests "to protect them against unreasonable risk of physical harm[.]" Comment c explains that a "carrier is under no duty to one who has left the vehicle and ceased to be a passenger, nor is an innkeeper under a duty to a guest who is injured or endangered while he is away from the premises." Id. § 314A cmt. c.

This application of duty is reflected in Hawaiʻi law where a landowner "has a duty to use reasonable care for the safety of all persons reasonably anticipated to be upon the premises[.]" Gibo v. City & Cty. of Honolulu, 51 Haw. 299, 301, 459 P.2d 198, 200 (1969) (citation omitted). Because Stephens

10

was injured away from Fairmont's premises, § 314A was not a basis for imposing a duty on Fairmont to warn Stephens in this case.

**D.** **The Circuit Court Did Not Err In Concluding That Fairmont Owed No Duty To Stephens Regarding An Off-Premises Hazard.**

Stephens contends that the Circuit Court "erred in finding that hotel owed no duty respecting an off-premises hazard (Makena) to [him]." To support this contention, Stephens argues that a "landowner's duty to one on its property has a duty to warn that person of any danger on another property of a hazard threat which danger the landowner knew or ought to have known about and to which property the person would be going and likely encounter it thereon." Stephens relies heavily on Rygg v. Cty. of Maui, 98 F. Supp. 2d 1129, 1137 (D. Haw. 1999) as distinguishing between "distance" and "foreseeability." Stephens posits that "the better rule is that if the person on the landowner's property will 'foreseeably' encounter an unreasonable risk of harm elsewhere, then such being a jury question, the trier-of-fact shall be the determinant of whether the facts involved are likely (foreseeably) to be encountered."

In Rygg, the plaintiff was a guest at a hotel, which was separated from Kamaole II Beach Park by South Kihei Road. 98 F. Supp. at 1131. The plaintiff suffered a paralyzing injury while in the waters directly offshore of Kamaole II Beach Park, and sued the County of Maui and the hotel for failing to warn of the dangerous ocean conditions. Id. Moving for summary judgment, the hotel argued that it did not owe or breach any duty, and Rygg's claims were barred by HRS § 486K-5.5. Id. at 1132.

11

The United States District Court, District of Hawaiʻi, found that HRS § 486K-5.5 was not applicable, and turned to the common law. Id. at 1134. The district court agreed with the plaintiff that "the duty to warn extends to such places in or about the hotel's premises as the hotel's guests may be reasonably expected to go during their visit." Id. at 1137 (emphasis added).

The district court then determined that the plaintiffs "proffered evidence from which a reasonable jury might conclude that it was foreseeable that Plaintiffs and other hotel guests might go to Kamaole II Beach Park" based, in particular, on the hotel's brochure that touts its location as "overlooking the golden sands of Kamaole Beach Park II." Id. at 1138 (internal quotation marks omitted). Thus, the district court could not "find as a matter of law that it was not foreseeable to [the hotel] that its [] guests might go to Kamaole II Beach Park and be injured there by dangers of which [hotel] knew or should have known." Id.

Rygg appears to place some measure of geographical limit on the duty owed by the hotel to "in or about the hotel's premises," and appears to consider Kamaole II as "about the hotel's premises" because its brochures touted the hotels location as overlooking Kamaole II Beach Park. To that extent, the district court could not find as a matter of law that it was not foreseeable to the hotel that its guests would go there.

Here, the Circuit Court concluded that "Fairmont, as an innkeeper, had no general duty to warn its guests of dangers well beyond Fairmont Resorts' properties — in this case, Mākena State

12

Park, Big Beach, some three plus miles away from the Fairmont Hotel — and thus there can be no liability for Fairmont." The Circuit Court noted that this "is not a case where [Stephens] went to an adjacent attraction nearby the hotel — [he] got in his car, drove several miles to Mākena State Park, Big Beach, a location over which the hotel had no control."

Stephens points to no evidence that shows Big Beach was somehow "in or about the hotel's premises." In Rygg, a necessary element of the statement of law, as argued by the plaintiffs and found correct by the district court, was that the place visited be "in or about the hotel's premises[.]" And, here, it is uncontroverted that Big Beach was not in or about Fairmont's premises.

**E.  Restatement (Second) of Torts § 323 Was Not A Basis For Duty.**

Stephens contends that the Circuit Court "erred in finding that the hotel did not voluntarily assume any duty to [him] respecting advising [him] concerning alternative beaches to which they might go which duty was not non-negligently performed." To support this contention, Stephens argues that "once [Fairmont] voluntarily decided to make such recommendation, it was voluntarily rendering a service to its guests just as much as if advising what church guests should attend, or where might be a good golf course," and cites to the Restatement (Second) of Torts § 323 (1965).

Otherwise known as the Good Samaritan doctrine, § 323 provides as follows:

13

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize <u>as necessary for the protection of the other's person</u> or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323 (1965) (emphasis added); <u>Roberson v. United States</u>, 382 F.2d 714, 721 n.3 (9th Cir. 1967). The comments to the restatement explain that "[t]his section applies to any undertaking to render services to another which the defendant should recognize as necessary for the protection of the other's person or things." Restatement (Second) of Torts § 323 cmt. a. "It applies whether the harm to the other or his things results from the defendant's negligent conduct in the manner of his performance of the undertaking, or from his failure to exercise reasonable care to complete it or to protect the other when he discontinues it." <u>Id.</u>

Here, an unidentified employee provided the name of a beach, along with driving instructions, in response to Stephens's inquiry about a good beach. No evidence was presented that the unidentified employee's job was to provide recreation recommendations to Fairmont's guests; this is not a case like <u>Rygg</u>, in which the hotel's brochure touted its location as "overlooking the golden sands of Kamaole Beach Park II." <u>Rygg</u>, 98 F. Supp. 2d at 1138.

Moreover, responding to a guest's inquiry is not the same as undertaking to render a protective service. <u>See</u> <u>Geremia v. State</u>, 58 Haw. 502, 507-08, 573 P.2d 107, 111-12 (1977) (providing examples of a "landlord who makes repairs without

14

obligation is liable if he thereby creates a false impression of safety in a dangerous situation" and "a gas company, which without obligation developed a practice of odorizing its gas, was liable for damage which resulted when the plaintiff was unable to detect the presence of non-odorized gas supplied by the company").  Again, an unidentified employee's response to Stephens's inquiry about a good beach does not constitute an undertaking to render a protective service.  Thus, § 323 of the Restatement (Second) of Torts did not apply.

**F.    The Circuit Court Did Not Violate HRCP Rule 56(d).**

Finally, Stephens contends that "[t]he lower court erred in dismissing all of [his] various causes of action, in breach of its Rule 56(d) H.R.C.P. mandate[.]"  In doing so, Stephens focuses on one portion of HRCP Rule 56(d), which provides that "the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy," and then posits that the circuit failed to "ascertain and direct."

HRCP Rule 56(d) must be viewed in context with HRCP Rules 56(b) and (c).  HRCP Rule 56(b) allows a defendant to move for summary judgment.  And HRCP Rule 56(c) provides, in part, that a motion shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  HRCP Rule 56(c).

15

HRCP Rule 56(d) then instructs the court on what to do when an order resolving the motion for summary judgment does not dispose of the entire case and trial is still necessary:

> If on motion under this rule judgment is <u>not rendered upon the whole case or for all the relief asked and a trial is necessary</u>, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

HRCP Rule 56(d) (emphasis added). Because summary judgment here disposed of all Stephens's claims and trial was not necessary, HRCP Rule 56(d) was not applicable.

## IV. CONCLUSION

For the foregoing reasons, we affirm the Circuit Court of the Second Circuit's May 19, 2017 Final Judgment.

DATED: Honolulu, Hawaiʻi, March 31, 2022.

On the briefs:

James Krueger,
for Plaintiffs-Appellants.

Randall Y. Yamamoto
Jeffrey Hu
(Yamamoto Kim)

Mark J. Bennett
Christopher R. Ford
(Starn O'Toole Marcus & Fisher)

William W. Drury (Pro hac vice)
Noel C. Capps (Pro hac vice)
(Renaud Cook Drury Mesaros),
for Defendant-Appellee.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge

16